UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TULALIP TRIBES, et al.,<br><br>                    Plaintiffs,<br><br>   v.<br><br>JOHN F. KELLY, et al.,<br><br>                    Defendants. | CASE NO. C17-652 MJP<br><br>ORDER ON MOTION TO DISMISS |

The above-entitled Court, having received and reviewed:

1. Defendants' Motion to Dismiss Complaint (Dkt. No. 10)

2. Plaintiffs' Opposition to Coast Guard Motion to Dismiss (Dkt. No. 14);

3. Defendants' Reply in Support of Motion to Dismiss Complaint (Dkt. No. 15);

all attached declarations and exhibits; and relevant portions of the records, rules as follows:

IT IS ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that, within 21 days of the date of this order, the parties will file a Joint Status Report with the Court.

**Background**

The Endangered Species Act ("ESA") protects and conserves threatened species and their habitats by (among other things) requiring federal agencies to consult with the National Marine Fisheries Service ("NMFS") to ensure their discretionary actions do not jeopardize threatened species or adversely modify a listed species' critical habitat. 16 U.S.C. § 1536(a)(2).

Consultation is required if a proposed federal action "may affect" a threatened or endangered species. 50 C.F.R. § 402.14(a). No consultation is mandated if the proposed action will have no effect (Southwest Center for Biological Diversity v. US. Forest Service, 100 F.3d 1443, 1447 (9th Cir. 1996) or if "the likelihood of jeopardy is too remote." Ground Zero Center for Non-Violent Action v. U.S. Dept. of Navy, 383 F.3d 19082 1092 (9th Cir. 2004).

The Ports and Waterways Safety Act ("PWSA"), passed by Congress in 1972, authorized the Coast Guard to "construct, maintain, improve, or expand vessel traffic services, consisting of measures for controlling or supervising vessel traffic, or for protecting navigation and the marine environment," and to "control vessel traffic in areas… which the Secretary determines to be hazardous." *See* 33 U.S.C. § 1233(a)(1), (4). To that end, the Coast Guard may designate "traffic separation schemes" ("TSSs") – defined as "a designated routing measure which is aimed at the separation of opposing streams of traffic by appropriate means and by the establishment of traffic lanes" (*see* 33 C.F.R. § 167.5(b) – for vessels operating in approaches to ports. *See* 33 U.S.C. § 1233(c)(1). Before the TSSs can be codified by the Coast Guard, they must be approved by the International Maritime Organization ("IMO"). 64 Fed. Reg. 32451, 32452.

The IMO adopted then implemented TSSs in the Strait of Juan de Fuca in January 1982 and in the Puget Sound in June 1993. *See* 75 Fed. Reg. 70,818, 70,819 (Nov. 19, 2010). In

August 2002, the Coast Guard issued a Notice of Proposed Rulemaking ("NPRM") stating that it would publish the TSSs in the Federal Register. *See* 67 Fed. Reg. 54,981 (Aug. 27, 2002); 33 U.S.C. § 1223(c)(4). The IMO approved the requests and implemented the new TSSs on December 1, 2006. IMO Circular COLREG.2/Cir.57 (May 26, 2006).[1]

On November 29, 2010, the Coast Guard published an announcement concerning the TSSs which indicated that the interm rule adopting the TSSs would become effective on January 18, 2011. 75 Fed. Reg. at 70,818. Although public comments were solicited (id.), none were received. 76 Fed. Reg. 23,191, 23,191-92 (Apr. 26, 2011). However, it was not until April 26, 2011, that the Coast Guard issued a rule "finalizing" the interim rule without change (id.) (again, the agency had indicated that it would entertain comments and consider changes up until that point; *see* 75 Fed. Reg. at 70,818).

Plaintiffs brought this lawsuit under the Endangered Species Act ("ESA"), alleging that the Coast Guard's failure to consult with the NMFS during the process for creation and codification of its TSSs in and around the Salish Sea is a violation of the ESA. Dkt. No. 1, Complaint at ¶¶ 73-78. Plaintiffs allege a cultural and spiritual interest in the ESA-listed Southern Resident Killer Whales ("the Southern Residents;" id. at ¶ 11), a species which they allege is threatened by the risk of oil spills and "other harms from large vessel traffic." Id. at ¶¶ 3-4.[2] The lawsuit contends that the Coast Guard has an obligation to "insure that large vessel traffic does not jeopardize the continued existence of these species" and that the Coast Guard's failure to consult with NMFS "regarding the potential impacts of the shipping traffic" on the Southern Residents is a violation of the ESA. Id. at ¶ 5.

---

[1] Publicly available at www.intertanko.com/upload/WeeklyNews/colreg2.57.pdf.

[2] The complaint alleges that NMFS has concluded that the loss of a single member of the Southern Residents' population would jeopardize its existence. Id. at ¶¶ 50-52.

## Discussion

The Coast Guard bases its request for dismissal on two grounds: (1) that, because there is no showing that the harm of which Plaintiffs complain is (a) reasonably likely or (b) is not dependent on the actions of independent non-parties (i.e., persons or groups other than the Coast Guard), Plaintiffs have no standing; and (2) the lawsuit is time-barred. Each argument is analyzed separately below.

Standing

Article III standing requires a showing that a plaintiff has

> suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.

Nat. Res. Def. Council v. Jewell, 749 F.3d 776, 782 (9th Cir. 2014)(en banc)(*citing* Friends of the Earth v. Laidlaw Env. Svcs (TOC), 528 U.S. 167, 168 (2000)).

Violations of ESA's "consultation requirement" constitute a "procedural injury" which must be established through allegations that

> (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests.

San Luis & Delta-Mendota Water Auth. V. Haugrud, 848 F.3d 1216, 1232-33 (9th Cir. 2017). The burden of proving the elements of causation and redressability is "lessened" upon a showing of procedural injury (Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008)), but a plaintiff is still required to show that the alleged injury is "fairly traceable" to defendant's action, does not rely "on conjecture about the behavior of other parties," and that the agency's "decision could be influenced by the environmental considerations that [the relevant

statute] requires an agency to study." Haugrud, 848 F.3d at 1233; Hall v. Norton, 366 F.3d 969, 977 (9th Cir. 2001).

The Coast Guard does not deny that they violated the ESA by failing to consult, nor do they contest that Plaintiffs have an interest in protecting the Southern Residents. Dkt. No. 10, Motion at 3 ("the Coast Guard does not question the sincerity of [Plaintiffs'] interest in the species").[3] Instead, Defendant challenges the existence of standing on the grounds that Plaintiff has failed to adequately plead injury, causation <u>or</u> redressability.

*Injury*

Defendant contends that Plaintiffs are required to plead facts demonstrating that the threats of which Plaintiffs complain (oil spills and vessel strikes) are "reasonably probable" because of the Coast Guard's failure to consult. Nuclear Inf. & Res. Svc. V. Nuclear Regulatory Comm'n, 457 F.3d 941, 949 (9th Cir. 2006). This argument is wide of the mark:

> The [relevant] "asserted injury is that environmental consequences might be overlooked" as a result of deficiencies in the government's analysis under environmental statutes.

Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994). The injury to Plaintiffs resides in the reasonable probability that, in failing to consult, the Coast Guard failed to account for the environmental impact of the TSSs on the Southern Residents. In mandating consultation in situations like this, the ESA has built in a presumption of injury from failure to do so, such that Plaintiffs are not required to "assert that any specific injury will occur" to the impacted species as a result of that failure. Citizens for Better Forestry v. U.S. Dept. of Agriculture, 341 F.3d 961, 971-972 (9th Cir. 2003).

---

[3] *See also* Pit River Tribe v. U.S. Forest Svc., 469 F.3d 768, 779 (9th Cir. 2006)(recognizing tribal "cultural and religious connections" as grounds for standing).

*Causation*

In what appears to me to be a continuation of their misapprehension regarding the nature of standing when pleading ESA violations, the Coast Guard argues that the harm alleged (again, Defendant refers to oil spills and vessel strikes) is not "fairly traceable" to their codification of the TSSs. They point out that "participation in a TSS by a ship's master is completely voluntary" and "does not impose [any] requirement on mariners." 75 Fed. Reg. at 70,823.[4] Furthermore, Defendant argues that the fact that the TSSs had been in place for several years prior to their codification in the C.F.R. undercuts Plaintiffs' position on the theory that it was not codification (with the attendant failure to consult) that "caused" the threats to the Southern Residents of which Plaintiffs complain.

Again, this misunderstands the nature of the violation and the underlying intent of the ESA. Plaintiffs need only plead that it was the Coast Guard's inactivity that resulted in the failure to consult as mandated by the ESA, not that the failure to consult is the "cause" of the threats of oil spills and vessel strikes which are the type of ultimate negative outcomes that environmental consultation is intended to avert.

In the first place, once the procedural injury is properly alleged, "causation and redressability are relaxed." Salmon Spawning, 545 F.3d at 1229. Causation is satisfied when the decisions of an agency challenged by the lawsuit "arguably may affect [a species] and what may be its habitat." Defs. Of Wildlife v. Flowers (414 F.3d 1066, 1069 (9th Cir. 2005)(emphasis

---

[4] At the same time, Defendant concedes that they could have made the TSSs mandatory had they chose to do so. Dkt. No. 15, Reply at 6. (*And see* PWSA, 33 U.S.C. § 1223(c)(5)(B), authorizing the Coast Guard to "make the use of designated fairways and traffic separation schemes *mandatory* for specific types and sizes of vessels… operating in the territorial seas of the United States;" emphasis supplied.) The Coast Guard argues that "[t]he fact that the agency could have controlled the shipmasters through a mandatory scheme and chose not to do so undermines, rather than supports, Plaintiffs' causation argument." Id. Defendant provides no further explanation for this position, and the logic of it escapes the Court.

supplied).  The Coast Guard regulates ship traffic through the TSSs and the presence of ship traffic is directly connected to the resultant possibilities of oil spills and vessel strikes.   Even the Coast Guard acknowledges that "[t]he expected benefits associated with codifying the existing TSSs include a potential reduction in the instances of groundings, collisions and other vessel casualties" (75 Fed. Reg. 70,818, 70,824), which are inextricably tied to the dangers which marine traffic poses to the endangered species.

Secondly, even if the decisions of independent third parties (ship captains, the IMO, etc.) were relevant to the chain of causation for these alleged ESA violations, those decisions will not break the chain of causation where "the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'"  Mendia v. Garcia, 768 F.3d 1009, 1013 (9th Cir. 2014)(citation omitted).  Even where compliance is voluntary, the only rationale for the creation of TSSs is to motivate those in charge of marine traffic to comply with them.  Causation is sufficiently plead in this complaint.

*Redressability*

Defendant's position concerning this element of standing is that, even if the Coast Guard were to consult with the NMFS and that consultation were to result in a reconfiguration of the TSSs, the discretion retained by the IMO and each shipmaster who navigates the affected waterways would be beyond the ability of the courts or the agency to predict or control.

The Coast Guard's argument continues to miss the point.  The injury plead in Plaintiffs' complaint is a procedural injury – the failure to consult as required by the ESA – and the redress of that injury is: to consult.  If some party or parties are dissatisfied with the result of that consultation, that is a subject for a separate lawsuit and completely beyond the scope of this proceeding.

In any event, regarding "redressability," "a plaintiff asserting procedural standing need not demonstrate that the application of the procedure will benefit him." Trout Unlimited v. Lohn, Case No. C05-1128-JCC, 2007 WL 1730090 at *11 (W.D. Wash. June 13, 2007). It is sufficient for standing purposes if the decision of the agency "could be influenced by the environmental consideration that [the statute] requires the agency to study" through means of consultation. Citizens for Better Forestry, 341 F.3d at 976 (citation omitted).

The redressability element is satisfied by Plaintiffs' pleadings and Plaintiffs have established standing to bring this action.

Statute of limitations

Defendant argues that Plaintiffs' claim is time-barred based on the application of the six-year statute of limitations provided for in 28 U.S.C. § 2401(a)(a civil action against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues.")

The Coast Guard's position is: the violation complained of is the adoption of the TSS regulations without complying with the consultation requirements of the ESA. The six-year limitations clock began ticking when the right of action first accrued. Defendant maintains that the date of accrual is January 18, 2011, the date the "interim final rule" adopting the updated TSSs became effective. Since Plaintiffs did not file their complaint until April 2017 (the argument goes), the six-year statute of limitations lapsed.

The cornerstone of this argument is Defendant's assertion that interim rules constitute "final and reviewable agency action." *See* Pub. Citizen v. Dept. of Transportation, 316 F.3d 1002, 1019 (9th Cir. 2003); Career College Assoc'n v. Riley, 74 F.3d 1265, 1268-69 (D.C. Circ.

1996)(designation of the effective date in the interim rule "put[s] the public on notice… that the regulation [i]s in final form when published."). Because (the argument goes) the TSSs were at that point "a reviewable final agency action susceptible to legal challenge and court review" (Motion at 17), the cause of action accrued on the effective date of the interim final rule. It is not a tenable position. The fact of the matter is that the Coast Guard published the TSSs as a "Final Rule" on April 26, 2011 and had made it clear that, up until that date, "the agency would consider all materials received and possibly 'change the rule based on [public] comments.' 75 Fed. Reg. at 70,818." (Motion at 17.)

The critical point here is that, under the ESA, a government agency has an obligation to consult at <u>any point</u> before it promulgates a final regulation. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02. Therefore, a claim challenging an agency's failure to consult accrues at the moment an agency finalizes its action without consultation. For the TSSs, that moment was April 26, 2011 and Plaintiffs timely filed their action in advance of the expiration of the statute of limitations.

As with the standing issue, the Coast Guard misses the point (or attempts to misdirect us) in their analysis. The agency insists that, because no comments were received or changes made to the "interim final rule," Plaintiffs' challenge is to the "*adoption* of the TSSs" (Reply at 10; emphasis supplied) and the statute of limitations must be calculated from the adoption of the "interim final rule." But the issue is not whether "comments" were received; the issue is whether the Coast Guard fulfilled its obligation under the ESA to (on its <u>own</u> initiative) consult with NMFS prior to finalization of the regulations. Plaintiffs' challenge is to that failure to consult, which Defendant could have done at any time prior to April 26, 2011. Thus, that becomes the date on which the cause of action for failure to consult accrues.

## **Conclusion**

Plaintiffs have adequately plead a procedural violation of the ESA and established their standing to bring this lawsuit – procedural injury (failure to consult in conformity with the ESA), causation (in the form of the Coast Guard's decision not to consult prior to finalizing the codification of the TSSs) and redressability. The six-year statute of limitations did not begin to run until adoption of the "final rule" on April 26, 2011 and thus Plaintiffs' filing of their complaint was timely. On those grounds, the motion to dismiss will be DENIED.

The parties are reminded that, per the Court's order at Dkt. No. 20, they have 21 days from the date of this order to submit their Joint Status Report.

The clerk is ordered to provide copies of this order to all counsel.

Dated: January 17, 2018.

Marsha J. Pechman
United States District Judge